IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DAVID LEE OLIVER, | § | |
| Petitioner, | § § § | |
| v. | § § | 2:07-CV-0066 |
| NATHANIEL QUARTERMAN, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Petitioner, a state inmate currently confined at the Clements Unit in Potter County, Texas, has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging the result of Disciplinary Case No. 20060246165 he received at the Terrell Unit in Brazoria County, Texas. For the reasons set forth below, it is the opinion of the undersigned United States Magistrate Judge that petitioner's federal application for habeas corpus relief should be DENIED.

I.
BACKGROUND

Petitioner is in respondent's custody pursuant to an April 2, 2003 conviction out of Dallas County, Texas, for the offense of delivery of a controlled substance, and the resultant 8-

year sentence.[1] *State v. Oliver*, F-0300337-JR. Any recitation of the specifics of petitioner's state court convictions and any post-conviction proceedings relating to them is unnecessary since petitioner complains only about a disciplinary proceeding.

II.
## PROCEDURAL HISTORY

Petitioner's offense, committed March 11, 2002, falls under the mandatory supervision scheme enacted by the State of Texas on September 1, 1996. Under that process, a parole panel shall order the release of an inmate to mandatory supervision unless the Board determines: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public. Tex. Gov't Code § 508.149(b). If a parole panel determines an inmate should not be released on mandatory supervision, it "shall reconsider the inmate for release to mandatory supervision at least twice during the two years after the date of the determination." Tex. Gov't Code § 508.149(d). After three (3) unsuccessful annual reviews, an inmate need not be reviewed again for release on mandatory supervision. *Ex parte Hill*, 208 S.W.3d 462, 464 (Tex.Crim.App. 2006) (citing *Ex parte Retzlaff*, 135 S.W.3d 45, 51 (Tex.Crim.App. 2004)). Prior to September 1, 1996, the Parole Board did not have the authority to hold a mandatory supervision eligible inmate past his mandatory supervision release date. The mandatory release date is the date when a prisoner's flat time served and good time earned equal the sentence assessed.

---

[1] At the time of the disciplinary proceeding, petitioner was also in respondent's custody pursuant to a May 21, 1991 conviction for the felony offense of possession with intent to deliver a controlled substance out of Dallas County, Texas, and the resultant 15-year sentence. Petitioner's sentences were running concurrently. On January 2, 2009 petitioner discharged this 15-year sentence.. *State v. Oliver*, No. F90-55846-UT.

Based on documents provided by petitioner, it appears petitioner was provided a "Notice of Initial Discretionary Mandatory Review" on December 13, 2005. This notice advised that based on the date of his offense, petitioner was [statutorily] eligible for mandatory supervision, but that he would not be released to mandatory supervision if the Board of Pardons and Paroles determined his accrued good conduct time was not an accurate reflection of his potential for rehabilitation and his release would endanger the public. The notice further advised a determination would be made within 30 days of petitioner's projected release date of February 25, 2006. The notice also advised petitioner he could submit any additional information he wished and would be notified of the Board's decision to either grant his release to mandatory supervision, or to deny such release, in which case he would be assigned a next review date for release consideration.

On February 1, 2006, the Board denied petitioner's release to mandatory supervision on the following grounds:

1. The record indicated petitioner's accrued good conduct time was not an accurate reflection of his potential for rehabilitation;

2. The record indicated petitioner's release would endanger the public; and

3. The record indicated petitioner had repeatedly committed criminal episodes or had a pattern of similar offenses that indicated a predisposition to commit criminal acts when released, or the record indicated the inmate was a leader or active participant in gang or organized criminal activity; or the record indicated a juvenile or adult arrest or investigation for felony and misdemeanors offenses.

Petitioner was provided with notice of the decision on February 2, 2006, and was advised his next review date was set for January 2007.

On April 28, 2006, petitioner was charged with committing the following disciplinary

offense:

> [A]t committee room, [petitioner] was ordered by Lt. F. Rodriguez to accept and move into E4-17, and said offender failed to obey the order because it was an integrated cell assignment, and stated: he didn't want to be housed at the C.T. Terrell Unit.

On May 4, 2006, petitioner was found guilty, in Case No. 20060241665, of the disciplinary offense of "noncompliance with a legitimate order to accept a housing assignment." Petitioner was punished with the forfeiture of 60 days previously accrued good time credits.[2]

On May 15, 2006, petitioner filed a Step 1 grievance to appeal the disciplinary decision and punishment imposed in the disciplinary proceeding. The grievance was denied June 9, 2006. Petitioner subsequently filed a Step 2 grievance challenging the disciplinary proceeding which was denied July 6, 2006.

On September 13, 2006, petitioner was provided a "Notice of Subsequent Discretionary Mandatory Review" setting forth the same information as the prior notice and advising the Board would make a determination as to whether he should be released to discretionary mandatory supervised release within 30 days of petitioner's next review date of January 1, 2007.

On December 11, 2006, the Board denied petitioner's release to mandatory supervision a second time because:

1.  The record indicated petitioner's accrued good conduct time was not an accurate reflection of his potential for rehabilitation;

2.  The record indicated petitioner's release would endanger the public;

3.  The record indicated petitioner had repeatedly committed criminal

---

[2]Other punishment with which petitioner was assessed constituted changes in the conditions of petitioner's confinement and does not implicate the Due Process Clause of the United States Constitution. *See Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 2297 (1995); *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). Consequently, to the extent, if any, petitioner challenges the loss of privileges, reprimand, solitary confinement, and line class reduction, he has failed to demonstrate a deprivation actionable in federal habeas law.

       episodes or had a pattern of similar offenses that indicated a predisposition to commit criminal acts when released, or the record indicated the inmate was a leader or active participant in gang or organized criminal activity; or the record indicated a juvenile or adult arrest or investigation for felony and misdemeanors offenses; and

4.     The record indicated petitioner committed a major disciplinary offense during the preceding six months resulting in a loss of good conduct time or loss of status below that at which the inmate entered prison; a pattern of disciplinary infractions sine the last review indicates a disregard for the rules.

Petitioner was provided notice of the decision on December 12, 2006 and was advised his next review date was set for December 2007.

On March 15, 2007, petitioner filed the instant habeas petition in the Southern District of Texas. The case was subsequently transferred to this Court and received on April 5, 2007.

On August 8, 2007, petitioner was again provided a "Notice of Subsequent Discretionary Mandatory Review" setting forth the same information concerning his offense date, eligibility for mandatory supervision, and the Board's discretion to deny petitioner release to mandatory supervision. The notice advised the Board would make a determination within 30 days of petitioner's next review date of December 1, 2007.

On November 13, 2007, the Board denied petitioner's release to mandatory supervision a third time because:

1.     The record indicated petitioner's accrued good conduct time was not an accurate reflection of his potential for rehabilitation;

2.     The record indicated petitioner's release would endanger the public;

3.     The record indicated petitioner had repeatedly committed criminal episodes or had a pattern of similar offenses that indicated a predisposition to commit criminal acts when released; or the record indicated the inmate was a leader or active participant in gang or organized criminal activity; or

> the record indicated a juvenile or adult arrest or investigation for felony and misdemeanors offenses; and

> 4. The record indicated petitioner had exhibited poor institutional adjustment.

Petitioner was provided notice of the decision on November 14, 2007 and was advised his next review date was set for November 2008.

On October 15, 2008, the Board denied petitioner's release to mandatory supervision a fourth time.

On June 3, 2009, petitioner was again provided a "Notice of Subsequent Discretionary Mandatory Review" advising the same as his prior notices and that the Board would make a determination within 30 days of petitioner's next review date of October 1, 2009. The notice also advised petitioner's next review date constituted his "projected release date."

The Court has not been provided with the September or October 2009 decision of the Board denying petitioner's release to mandatory supervision a fifth time. However, the current TDCJ-CID online Offender Information Detail reflects petitioner's projected release date now is August 8, 2010, the same date as his maximum sentence date. The Detail also indicates petitioner is not scheduled for release at this time. Based upon the Offender Information Detail, it is clear the Board denied petitioner mandatory supervised release in October 2009 and as set forth in the June 3, 2009 notice to petitioner, it appears petitioner will not again be reconsidered for mandatory supervised release prior to discharging his sentence in August 2010.

## III.
## ELIGIBILITY FOR MANDATORY SUPERVISION

Federal habeas relief cannot be granted unless the petitioner "has been deprived of some

right secured to him by the United States Constitution or the laws of the United States." *Hillard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir.1985). Although Texas' post-September 1, 1996 mandatory supervision scheme is not truly mandatory and is at least discretionary in part, it has been held to "create constitutional expectancy of early release [to mandatory supervision] and, as such, creates a protected liberty interest in previously earned good-time credits." *Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007). Consequently, based on his "expectation" of early release to mandatory supervision when his actual time served plus his accrued good-time credit equaled the term of imprisonment to which he had been sentenced, petitioner was entitled to due process protection before being deprived of his good time credits through disciplinary proceedings up until at least February 1, 2006, when the parole panel, exercising its discretion under section 508.149(b) to the Texas Government Code, denied petitioner early release to mandatory supervision. After February 1, 2006, petitioner would arguably no longer have a constitutional expectancy to early release, at least as of the date his accrued good time and flat time equaled his sentence.[3] The discretionary findings by the Board resulted in petitioner not being released to mandatory supervision. Such an inmate has been classified as being "temporarily ineligible" for mandatory supervision release by Texas courts. *Cf. Ex parte Hill*, 208 S.W.3d at 462, 465.

Once an inmate who was eligible for the post-September 1, 1996 "discretionary mandatory release" is denied release to mandatory supervision, the issue becomes whether that inmate retains any liberty interest in his good time credits and if he does, whether those good time credits would, if restored, result in earlier release.

---

[3]The Board was only required to reconsider petitioner "for release to mandatory supervision at least twice during the two years after the date of [its original] determination." Tex. Gov't Code § 508.149(d)).

In this case, petitioner has not only been denied release to mandatory supervision on the three occasions, his statutorily mandated review was conducted, but he has been denied such release a total of five times. Critically, TDCJ-CID records indicate petitioner is not currently scheduled for early release on either parole or mandatory supervision and, in fact, TDCJ records reflect petitioner's projected release date is his discharge date. Consequently, petitioner cannot establish a viable protected liberty interest in his previously earned good time credits due to his ineligibility for release to mandatory supervision. Consequently, he is not entitled to federal habeas corpus relief.[4]

Stated differently, once petitioner's flat time and good time equaled his sentence and he was not approved for release to mandatory supervision, the flat time he would accrue after February 2006, when he was first denied release up to his next review in January 2007, was far greater than the 60 days good time he lost as a result of the disciplinary case he challenges. Since the restoration of the forfeited 60 days good time would not result in petitioner being eligible for earlier release, he would no longer have a liberty interest in the restoration of those 60 days of forfeited good time or at a minimum, the restoration issue was rendered moot. When his projected release date later became the same as his discharge date, the issue unquestionably became moot. Petitioner has failed to show the deprivation of a constitutionally protected liberty interest and this petition should be denied.

---

[4] The Texas Court of Criminal Appeals has held the statute vests a liberty interest in an eligible inmate to certain procedural due process considerations. *See Ex parte Geiken,* 28 S.W.3d 553, 558-60 (Tex.Crim.App. 2000). In light of the liberty interest created by the statute, the state court determined that constitutional due process requires that an eligible inmate be provided timely notice that he will be considered for mandatory supervision release and a meaningful opportunity to be heard – *i.e.*, an opportunity to tender or have tendered to the Board information in support of release. *Id*. at 559-60. Additionally, if release is denied, the inmate must be informed in what respects he falls short of qualifying for early release. *Id.* at 560. Also, the state court determined that the notice requirement requires the Board to inform the inmate of the specific month and year he will be reviewed. *Ex parte Ratzlaff,* 135 S.W.3d 45, 50 (Tex.Crim.App. 2004).

## IV.
## PETITIONER'S ALLEGATIONS

Petitioner contends his federal constitutional rights were violated with regard to the disciplinary proceeding in Case No. 20060246165 because:

1. The disciplinary report was fabricated by the charging officer who was not present during the incident in question;

2. *The charge is a result of a conspiracy between the charging officer and petitioner's case manager on the unit classification committee*;

3. *The disciplinary hearing officer refused to call petitioner's requested witnesses, to wit: all members of the classification committee*;

4. The evidence was not sufficient to support a finding of guilt because:

    a. case manager Harris, rather than charging officer Lt. Rodriguez, accused petitioner of refusing his housing assignment in the classification committee room rather than in the hallway; Lt. Rodriguez was not present at the time of the incident and gave false testimony at the hearing;

    b. Lt. Burson testified he did not recall Lt. Rodriguez give an order to petitioner;

    c. Harris' testimony did not corroborate Lt. Rodriguez's testimony; and

    d. there were no witnesses to support Lt. Rodriguez's version of the incident;

5. *This disciplinary violation was brought in retaliation for petitioner's refusal to participate in pre-parole programs*; and

6. *The disciplinary hearing tape has been altered*.

## V.
## EXHAUSTION OF STATE REMEDIES/
## PROCEDURAL DEFAULT

No relief may be granted to petitioner unless he has exhausted the remedies available in

the courts of the State, or an exception to exhaustion exists. However, an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2). This AEDPA deference scheme also applies to a habeas petition challenging the determination resulting from a prison disciplinary procedure for which appeal is available through the grievance process. *Baxter v. Estelle*, 614 F.2d 1030 1031-32 (5th Cir. 1980). Such an appeal through the grievance process has been construed to constitute "the right under the law of the State to raise, by [an] available procedure, the question presented." 28 U.S.C. § 2254(c); *see also Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978).[5]

In his Step 1 grievance challenging the disciplinary ruling, petitioner alleged:

- case manager Harris made a racist remark in response to petitioner's request to be placed in special housing;

- there was insufficient evidence for the finding of guilt in that witnesses Lt. Burson and Harris both testified they did not t recall Lt. Rodriguez ordering petitioner to move into a certain cell;

- no housing order was, in fact, given by charging officer Lt. Rodriguez;

- the offense with which petitioner was charged was fabricated;

- petitioner was improperly charged;

- the preliminary investigation was improperly conducted;

- petitioner was denied proper examination of the witnesses;

- Lt. Rodriguez's testimony was hearsay, false and "racially-motivated";

- the hearing and investigation was not impartial;

- the Hearing Officer was biased;

---

[5]At the present time, the petitioner is not required to present habeas claims challenging prison disciplinary cases to the Texas Court of Criminal Appeals because that court has stated it will not entertain challenges to prison disciplinary proceedings or the denial of good conduct time credit under the Prison Management Act. *Ex parte Palomo,* 759 S.W.2d 671 (Tex. Crim. App. 1988).

- petitioner's punishment was too severe; and

- petitioner's Due Process and Equal Protection rights were violated.

In his Step 2 grievance, petitioner alleged:

- the evidence was insufficient to sustain the disciplinary ruling;

- the review of petitioner's Step 1 appeal was "frivolous" and biased thereby denying petitioner a fair and just appeal;

- charging officer Rodriguez's testimony was hearsay;

- the warden's biased grievance response at Step 1 demonstrated a conspiracy to violate petitioner's Due Process and Equal Protection rights.

Petitioner failed to raise grounds 2, 3, 5, and 6 (italicized) through the prison's grievance process. Therefore, the state prison was not provided the opportunity to correct, if necessary, these alleged errors in its disciplinary proceeding. Consequently, petitioner has only exhausted grounds 1 and 4 in this federal habeas petition. Since grounds 2, 3, 5 and 6 were never properly exhausted, they may not now be submitted for state review as any newly filed grievance would be untimely. Consequently, such grounds are procedurally barred from consideration by this Court.[6]

## VI.
## MERITS

In order to prevail, petitioner must show his due process rights were violated during the disciplinary process. The United States Supreme Court has set out the due process to which a prisoner is entitled during a disciplinary proceeding. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court held that while disciplinary proceedings are not

---

[6]*See Coleman v. Thompson*, 501 U.S. 722, 729-730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (federal habeas courts are barred from considering claims when a petitioner fails to satisfy state procedural requirements as to those claims).

part of the criminal prosecution process and, therefore, the full panoply of rights does not apply, there are certain minimal due process provisions required to be satisfied. Those are: (1) advance written notice of the charges; (2) an opportunity to call witnesses and/or present documentary evidence when such presentation is not unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action.

### Sufficiency of the Evidence (Claims 1 and 4)

In his first ground, petitioner claims his due process rights were violated because the charging officer "fabricated a disciplinary offense against petitioner of refusing to accept and move into E4-17, a housing location." This ground, in effect, alleges the evidence to support the finding of guilt was insufficient and contends the finding was based on a fabricated offense report.

In his fourth ground, petitioner claims his due process rights were violated. He alleges the evidence did not support the finding of guilt because: charging officer Lt. Rodriguez was not present at the time of incident and gave false testimony at the hearing; Lt. Burson testified he did not recall Lt. Rodriguez giving an order to petitioner; the testimony of Unit Classification Committee member Harris did not corroborate Lt. Rodriguez's testimony; and there were no witnesses to support Lt. Rodriguez's fabricated version of the incident.

Federal habeas review of the evidence in a prison disciplinary cases is limited. The law in the Fifth Circuit is that the findings of a prison disciplinary hearing shall not be disturbed unless they are arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Due process is satisfied when there is "some evidence" to support the disciplinary hearing's finding, not proof "beyond a reasonable doubt." *Broussard v. Johnson*, 253 F.3d 874,

876 (5th Cir. 2001). Thus, as long as there is "any evidence at all" to support the disciplinary hearing officer's findings, the result of the hearing will be upheld. *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001) (quoting *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986)).

Here, petitioner's refusal to accept a housing assignment gave rise to the offense report alleging a disciplinary code violation. In reaching a finding of guilt, the hearing officer relied on the officer's report and witness testimony. The record supports that "some evidence" was presented to support a guilty finding.

In his offense report, charging officer Lt. Rodriguez stated that "during committee [petitioner] was offered housing and refused to accept housing." The offense report indicated petitioner was offered alternative housing in cells E3-02 and E4-31, but that petitioner also refused these assignments. Lt. Rodriguez stated he ordered petitioner "to accept and move into E4-17" and that petitioner failed to obey the order. Lt. Rodriguez's testimony at the hearing corresponded with his recount of the events in his offense report.

Lt. Burson testified at the disciplinary hearing that his role on the date of the incident in question was to escort petitioner who was refusing housing. Lt. Burson acknowledged he did not remember being present when Lt. Rodriguez issued a direct order to petitioner. In the statement he gave before the questioning of any witnesses, petitioner acknowledged "three direct orders for housing," but explained he "d[id]n't think he was refusing housing, [he] was asking for protection, and that's two different things."

As support for his claim that the evidence was not sufficient to support a finding of guilt, petitioner argues Harris, rather than Lt. Rodriguez, accused petitioner of refusing his housing assignment; that this accusation occurred in the classification committee room rather than in the

hallway; that Lt. Rodriguez was not present at the time of the incident; and that Lt. Rodriguez's testimony at the hearing was false. Petitioner's assertions do not establish the testimony of Lt. Rodriguez was false and petitioner's statements are not "of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Petitioner also alleges Harris' testimony did not corroborate Rodriguez's testimony. The record, however, does not reflect any testimony was given by Mr. Harris or received by the hearing officer. Further, petitioner's claim that there were no additional witnesses to support Lt. Rodriguez's version of the incident does not establish that the officer's offense report and testimony were false.

Lastly, petitioner's reasoning for his noncompliance, as well as his different perspective of his actions, did not render his actions non-violative of the disciplinary code. The offense with which petitioner was charged was "noncompliance with a legitimate order to accept a housing assignment." Petitioner acknowledged he refused not only one, but three, housing assignments.[7]

Petitioner's claim of insufficient evidence merely amounts to a disagreement with the fact-finder's resolution of conflicts in the evidence. As noted above, the Fifth Circuit has directed that disciplinary determinations "will not be disturbed unless they are arbitrary and capricious." The record reveals the finding of guilt was supported by at least "some evidence" in the form of the assisting officer's testimony, the charging officer's written report and testimony, and petitioner's own statement. Consequently, the finding is not "arbitrary and capricious" and will not be disturbed. *Cf. Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1989) ("we should not substitute our view of the evidence for that of the fact-finder"). Petitioner's claims should be

---

[7]Petitioner was only charged with one (1) violation of disciplinary code 24.2, refusing to accept a housing assignment.

denied.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner DAVID LEE OLIVER be DENIED.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

## IX.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner DAVID LEE OLIVER is without merit and should be, in all things, DENIED.

## X.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file-marked copy of this Report and Recommendation to petitioner by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of August, 2010.

_/s/ Clinton E. Averitte_
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

 Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

 Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).